IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CESAR SANCHEZ, individually and on behalf of all others similarly situated, | § § § § | |
| Plaintiffs, | § § | |
| V. | § | No. 3:23-cv-540-L-BN |
| 600 NORTH AKARD LLC D/B/A DAKOTA'S STEAKHOUSE, et al., | § § § § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
<u>UNITED STATES MAGISTRATE JUDGE</u>**

**Background**

This action was filed as a collective action under the Fair Labor Standards Act, 29 U.S.C. § 201, *et. seq*. The case has now been referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and an order of reference from United States District Judge Sam A. Lindsay. See Dkt. No. 31.

On November 6, 2023, the Court entered an Electronic Order granting Defendant 600 North Akard LLC d/b/a Dakota's Steakhouse and Defendant Lincoln Restaurant Group, Inc.'s Motion for Protective Order [Dkt. No. 24] and explaining that

> Defendants request that the Court (1) enter a protective order that Defendants are not required to respond to the discovery requests that Plaintiffs have served after the parties completed their Federal Rule of Civil Procedure 26(f) conference and filed their [23] Joint Request for

Phases and Joint Status Report and (2) order the parties to confer regarding a mutually reasonable discovery procedure that can be agreed upon and/or submitted to the Court for review.

Plaintiffs respond that the parties have conferred as required and agreed on the categories and topics related to conducting discovery during Phase One and that Plaintiffs' serving discovery is permitted by the governing Federal Rules of Civil Procedure and not subject to any stay of discovery.

Federal Rule of Civil Procedure 26(d)(1) provides that "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order." Fed. R. Civ. P. 26(d)(1). Once discovery is authorized by rule, stipulation, or court order or because the parties have conferred as Federal Rule of Civil Procedure 26(f) requires, "[u]nless, on motion, the court orders otherwise for the parties' and witnesses' convenience and in the interests of justice: (A) methods of discovery may be used in any sequence; and (B) discovery by one party does not require any other party to delay its discovery." Fed. R. Civ. P. 26(d)(3). "Rule 26(d) generally governs the sequencing of discovery unless the Court enters a protective order under [Federal Rule of Civil Procedure] 26(c) or another order governing the sequence of conducting discovery under Federal Rule of Civil Procedure 16(b) or 26(d) or the parties make a stipulation under Federal Rule of Civil Procedure 29." Heller v. City of Dallas, 303 F.R.D. 466, 493 (N.D. Tex. 2014).

But Plaintiffs' claims under the Fair Labor Standards Act, seeking to proceed as a collection action under 29 U.S.C. § 216(b), give rise to more specific requirements after the United States Court of Appeals for the Fifth Circuit's decision in Swales v. KLLM Transp. Servs., L.L.C., 985 F.3d 430 (5th Cir. 2021). As Plaintiffs explained in the parties' Joint Status Report, "[u]nder Swales, a district court should identify, at the outset of the case, what facts and legal considerations will be material to determining whether a group of 'employees' is 'similarly situated.' And then it should authorize preliminary discovery accordingly. The amount of discovery necessary to make that determination will vary case by case, but the initial determination must be made, and as early as possible." Dkt. No. 23 at 11 n.2 (quoting Swales, 985 F.3d at 441).

"Under Plaintiff's proposal, Phase One would be limited to resolving the question of whether Plaintiffs and other individuals are 'similarly situated,' and therefore, entitled to receive notice of their right to join this action pursuant to Section 216(b) of the FLSA." Dkt. No. 23 at 2.

This phased approach is consistent with the requirements laid out in Swales, under which "collective actions may only proceed under the FLSA so long as the potential members are 'similarly situated,'" and "[d]istrict courts should rigorously enforce [the FLSA's similarity requirement] at the outset of the litigation" and, "[i]n determining whether 'employees' are 'similarly situated,'... must scrutinize all facts and legal considerations material to determining such status, including merits questions." Klick v. Cenikor Found., 79 F.4th 433, 440 (5th Cir. 2023) (cleaned up). Plaintiffs "bear the burden of proving a collective is similarly situated." Id. at 442.

And, as another judge in this circuit recently explained, "[i]n Swales, the Fifth Circuit explained that district courts should identify, at the outset of the case, what facts and legal considerations will be material to determining whether a group of 'employees' is 'similarly situated.' Only then can the district court determine whether to conditionally certify and issue the opt-in notices. The court has discretion to order targeted discovery to determine whether to conditionally certify and issue notice to potential plaintiffs. The bottom line is that the district court has broad, litigation-management discretion [in class certification]." Lagunas v. La Ranchera, Inc., No. CV H-22-17, 2023 WL 5511198, at *2 (S.D. Tex. Aug. 25, 2023) (cleaned up).

The Court has not entered a scheduling order in response to the parties' [23] Joint Request for Phases and Joint Status Report, has not identified what facts and legal considerations will be material to determining whether a group of employees is "similarly situated," as the FLSA requires, and has not authorized targeted discovery that is directed to those facts and consideration to enable the Court to determine whether to conditionally certify and issue notice to potential plaintiffs. Plaintiffs' discovery requests may, at least in part, be targeted to those matters, but the Court cannot be sure at this point.

Defendants do not seek a stay of discovery based on the appeal of the Western District of Texas judgment regarding the 80/20 Rule -- and the Court does not find good cause to order such a stay, for the reasons that Plaintiffs have argued, see Dkt. No. 23 -- but rather Defendants urge the Court to follow governing Fifth Circuit law to manage the proceedings in Phase One, as the parties have proposed.

And that is what the Court will do, following the lead of another court that noted that, under Swales, "the Court must first decide what facts and legal considerations will be material to determining whether a group of 'employees' is 'similarly situated'" and, "[t]hen, and only then, should the Court 'authorize preliminary discovery accordingly.'" Eltayeb v. Deli Mgmt., Inc., No. 4:20-CV-00385, 2021 WL 1061186, at *4 (E.D. Tex. Mar. 19, 2021) (cleaned up; quoting Swales, 985 F.3d at 441).

> "Without deciding what facts and legal considerations are material, the Court cannot limit discovery accordingly." Id.
>
> The Court finds good cause for these reasons and enters the requested protective order that Defendants are not required to respond to the discovery requests that Plaintiffs have served and also orders that, by November 29, 2023, Plaintiffs and Defendants must confer and file a supplemental joint status report that describes each parties' views on the facts and legal considerations that are material to the "similarly situated plaintiffs" analysis and the targeted, preliminary discovery that is necessary to determine whether to conditionally certify and issue notice to potential plaintiffs.

Dkt. No. 34.

The parties then filed the required supplemental joint status report and explained that

> [t]he parties have conferred and submit to the Court that the supplemental joint status report of the parties due this Wednesday, November 29, 2023, and the Court's determination "whether to conditionally certify and issue notice to potential plaintiffs" is no longer necessary in light of the parties' agreement and stipulation that conditional certification of "servers" and "bartenders" as potential collective members is appropriate at this stage of the proceedings in this matter.
>
> Regarding the Court's notice to potential plaintiffs, the parties are in agreement that it would be appropriate for the Court to consider ordering that the parties submit to the Court, by Tuesday, December 19, 2023, or any other date required by the Court, either (a) an agreed notice and consent procedure and communication to the potential plaintiffs or (b) a partially agreed notice and consent communication to the potential plaintiffs with respective briefing and argument by the parties regarding any unagreed language or unagreed consent notification procedures.
>
> The parties are also in agreement that it would be appropriate for the Court to consider ordering that the parties, within ten (10) business days after the close of the consent period, jointly submit to the Court a proposed scheduling order for the remainder of the proceedings in this matter.

Dkt. No. 38 at 1-2.

Before the Court acted on that request, the parties filed a Joint Motion for Certification of a Collective Action and the Issuance of Court-Authorized Notice. *See* Dkt. No. 39.

In the joint motion, the parties explain:

> I. STIPULATION REGARDING CERTIFICATION OF A COLLECTIVE ACTION
>
> On November 28, 2023, the parties filed a Supplemental Joint Status Report [Doc. 38], wherein parties advised the Court of their agreement and stipulation to certify a collective of employees consisting of servers and bartenders under the FLSA, 29 U.S.C. § 216(b). Specifically, the parties agree and stipulate to certify a collective pursuant to 29 U.S.C. § 216(b), of two groups of employees ("Collective Members") defined as:
>
> **<u>Server Collective Members</u>. All current and former employees who worked at least one shift as a server (i.e. waiter or waitress) at Dakota's Steakhouse since September 1, 2021, through the present and were paid a direct cash wage of less than minimum wage.**
>
> **<u>Bartender Collective Members</u>. All current and former employees who worked at least one shift as a bartender at Dakota's Steakhouse since September 1, 2021, through the present and were paid a direct cash wage of less than minimum wage.**
>
> II. STIPULATION REGARDING METHODS AND CONTENT OF NOTICE
>
> The parties stipulate to notice being disseminated to the Collective Members via first-class mail and text message. The parties stipulate to the content of the notices and methods of dissemination as follows: Exhibit 1 to be delivered via first-class mail, Exhibit 2 to be delivered via text message, and Exhibit 3 to be delivered via a reminder notice. The parties further stipulate to a sixty (60) day opt-in period, and respectfully request the Court enter the following deadlines to facilitate the dissemination of notice:
>
> **On or before January 12, 2024:** Defendants shall provide to Plaintiffs' Counsel in Excel (.xlsx) format the following information regarding all Collective Members: full name; last known mailing address(es) with city, state, and Zip Code; all known telephone number(s), email address(es); job title(s), and beginning date of employment and ending date of employment (if applicable).
>
> **On or before February 2, 2024:** Plaintiffs' Counsel shall send

the Court-approved Notice and Consent Form (Exhibit 1) to the Collective Members by First Class U.S. Mail; Plaintiffs' Counsel shall also send the Court-approved Notice (Exhibit 2) via text message.

**Within 3 days of the initial mailing and texting of the initial notices to Collective Members:** Plaintiffs' Counsel shall file an Advisory with the Court indicating the date of transmitting the initial Notices of Collective Action.

**No sooner than 30 days after mailing and texting the first notice to the Collective Members:** Plaintiffs' Counsel shall send reminder notice to Collective Members by sending Exhibit 3 via First Class U.S. Mail and resending Exhibit 2 via text message.

**60 days from the initial mailing and texting of the initial notices to Collective Members:** The Putative Collective Members shall have 60 days to return their signed Consent forms to Plaintiffs' Counsel for filing with the Court (the "Notice Period").

**No later than 15 days after the close of the Notice Period:** Plaintiffs' Counsel shall file with the Court all signed Consents to Join.

\* \* \*

Accordingly, the Parties respectfully request the Court approve the attached notice forms and order that notice be distributed in accordance with the schedule set forth above and as set forth in the proposed order submitted herewith.

Dkt. No. 39 at 1-3.

Courts have treated a motion to certify a collective under Section 216(b) as a dispositive motion. *See Francis-Luster v. Kelley L. Firm, P.C.*, No. 3:19-cv-2708-L-BK, 2022 WL 822468 (N.D. Tex. Feb. 10, 2022), *rep. & rec. adopted*, 2022 WL 575566 (N.D. Tex. Feb. 25, 2022). And, so, the undersigned enters these findings, conclusions, and recommendation that the Court should grant the parties' Joint Motion for Certification of a Collective Action and the Issuance of Court-Authorized Notice [Dkt. No. 39] and sign and enter their proposed order [Dkt. No. 39-4]

## Legal Standards and Analysis

I.  <u>The Court should grant the parties' joint request to certify a collective.</u>

As the Court recently explained,

[t]he FLSA requires covered employers to pay nonexempt employees for hours worked over 40 in a week, at the overtime rate of "not less than one and one-half times the regular rate at which [they are] employed." 29 U.S.C. § 207(a)(1). FLSA section 216(b) provides employees a cause of action against employers who violate section 207. 29 U.S.C. § 216(b). Under section 216(b), employees may sue via a collective action, which requires an affirmative, individual consent in writing from each employee who wishes to join. 29 U.S.C. § 216(b). This makes FLSA collectives different than typical class actions – "29 U.S.C. § 216(b) does not truly authorize a class action: it is properly viewed as a rule of joinder under which only the individual opt-in plaintiffs have legal status, not the aggregate class of aggrieved employees."

Employees may only proceed as a collective when they are "similarly situated" to one another. 29 U.S.C. § 216(b). Courts are tasked with deciding who is "similarly situated" such that they may join the collective – neither section 216(b) nor any Fifth Circuit precedent offers a clear-cut method of determining this, however. *Eltayeb v. Deli Mgmt., Inc.*, No. 4:20-CV-00385, 2021 WL 5907781, at *2 (E.D. Tex. Dec. 14, 2021). Prior to 2021, courts typically applied the *Lusardi* two-step approach to decide whether to "certify" section 216(b) collective actions. *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D. N.J. 1987); *see Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430, 434 (5th Cir. 2021) (rejecting *Lusardi*). *Lusardi* calls for a more lenient approach in its first step, which merely requires that litigants provide a basic factual showing of similarity before they may proceed as a collective. *Swales*, 985 F.3d at 436. The second step, effectively deciding whether to decertify the collective, necessitates a more careful look at the members' similarity. *Id.* at 437.

Following the *Swales* decision, courts must abandon the two-step approach and "identify, at the outset of the case, what facts and legal conclusions will be material to determining whether a group of 'employees' is 'similarly situated.'" *Id.* at 441. Texas federal district courts have interpreted *Swales* as a call to execute the more stringent, second *Lusardi* step from the outset.

Courts have "broad, litigation-management discretion" in determining whether putative collective-action members are similarly situated, *Swales*, 985 F.3d at 442, but should consider: (1) the putative members' disparate factual and employment settings; (2) defenses available to the defendant that may be individual to each potential member; and (3) considerations of fairness and procedure. "[N]o one-size-fits-all solution exists." Moreover, before deciding whether notifying a collective is warranted, courts may opt for further discovery or may limit the collective to only include certain members; contrarily, courts may find notice justified "when the pleadings and only preliminary

> discovery show sufficient similarity between the plaintiffs' employment situations." *Swales*, 985 F.3d at 441. Overall, courts should ask whether the case's merits can be answered collectively, thereby avoiding any future need for "highly individualized [inquiries] into each potential opt-in's circumstances" that would quickly devolve a collective action into a "cacophony of individual actions." *Id.* at 442. Notice may be sent to those putative members who meet these criteria for similarity. *Id.* at 443.

*Francis-Luster*, 2022 WL 822468, at *1-*2 (cleaned up).

And another judge in this circuit provides a similar, helpful explanation:

> Recent Fifth Circuit caselaw has upended a traditional two-step certification process which allows district courts to conditionally certify collective actions in FLSA cases. *Swales v. KLLM Transport Services, LLC*, 985 F.3d 430 (5th Cir. 2021) (rejecting the two-step certification framework established in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987)). The *Swales* panel directed district courts to "rigorously scrutinize the realm of 'similarly situated' workers ... from the outset of the case." *Id.* at 436. To determine whether notice should be provided, district courts must decide whether "merits questions can be answered collectively." *Id.* at 442.
> Depending on the underlying issues in each case, a court may require varying degrees of pre-notice discovery before making a determination. In some cases, such as where "the plaintiffs all have the same job description, and the allegations revolve around the same aspect of that job ..., a district court will not likely need mountains of discovery to decide whether notice is appropriate. In another case, such as.... where Plaintiffs have demonstrably different work experiences, the district court will necessarily need more discovery." *Id.* at 441-42. In these cases, a court may "(1) 'conclude that the Plaintiffs' and Opt-ins are too diverse a group' to support a collective action; (2) 'decide that [the court] needs further discovery to make [a] determination'; or (3) 'find that only certain subcategories of' employees 'should receive notice.'" *Eltayeb v. Deli Mgmt., Inc.*, No. 4:20-CV-00385, 2021 WL 5907781, at *2 (E.D. Tex. Dec. 14, 2021) (quoting *Swales*, 985 F.3d at 443).
> Courts must be cautious about opining on or endorsing the merits of a plaintiff's action at the notice stage. *Swales*, 985 F.3d at 440 ("The law instead says that the district court's job is ensuring that notice goes out to those who are 'similarly situated,' in a way that scrupulously avoids endorsing the merits of the case."); *see also Hoffmann-La Roche Inc.* [*v. Sperling*, 493 U.S. 165, 174 (1989)] ("In exercising the discretionary authority to oversee the notice-giving process, courts must be scrupulous to respect judicial neutrality."). As a general matter,

> "[c]onsidering, early in the case, whether merits questions can be answered collectively has nothing to do with endorsing the merits." *Swales*, 985 F.3d at 442. However, *Swales* notes an exception to this principle where a "merits issue" is a "dispositive, threshold matter[.]" *Id.* at 441. In some instances, the Court must decide whether plaintiffs may bring FLSA claims at all. For instance, a Court may need to determine whether an arbitration agreement forecloses collective action or whether plaintiffs should be classified as employees at all. In these cases, the district court should decide the threshold legal issue before determining whether notice is proper. *Id.* at 441.
>
> ….
>
> Plaintiff bears the burden of showing that potential plaintiffs are similarly situated to proceed to the notice stage. *Swales*, 985 F.3d at 435 n.65. While district courts in the Fifth Circuit no longer apply the *Lusardi* two-step process, they have continued to use factors from *Lusardi* to determine whether employees were "similarly situated" with respect to the alleged violations. Those factors are: "(1) the disparate factual and employment settings of the proposed plaintiffs; (2) the various defenses available to the defendant which appear to be individual to each proposed plaintiff; and (3) fairness and procedural considerations." *Lusardi*, 118 F.R.D. at 359.

*Cortez v. Casa do Brasil, LLC*, 646 F. Supp. 3d 847, 852-53 (S.D. Tex. 2022) (cleaned up); *accord Keller v. El Dorado Oil & Gas, Inc.*, No. 1:22CV42-HSO-RPM, 2023 WL 8002681, at *6 (S.D. Miss. Apr. 10, 2023).

Applying these post-*Swales* standards, the Court should grant the parties' joint request to certify a collective under 29 U.S.C. § 216(b) of two groups of employees defined as (1) "Server Collective Members" and (2) "Bartender Collective Members."

Under *Swales*, "the FLSA's similarity requirement is something that district courts should rigorously enforce at the outset of the litigation," and, so, "to determine whether and to whom notice should be issued in this case, the Court needs to consider all of the available evidence." (cleaned up; quoting *Swales*, 985 F.3d at 442, 443). "After doing so, it may decide that the case cannot proceed on a collective basis, that

it needs further discovery to make this determination, or that only certain individuals should receive notice." *Id.*

The parties' stipulation reflects that there are no disparate factual and employment settings that preclude a finding that the "current and former employees who worked at least one shift as" a server (waiter or waitress) or a bartender at Dakota's Steakhouse since September 1, 2021, through the present and were paid a direct cash wage of less than minimum wage are similarly situated for Section 216(b)'s purposes. As the parties all "agree, this [is] a sufficiently narrow definition of those individuals who are similarly situated to Plaintiff under the FLSA that they should receive notice in accordance with *Swales*." *Keller*, 2023 WL 8002681, at \*7; *accord Francis-Luster*, 2022 WL 822468, at \*2-\*4.

Defendants have not raised any defenses available to them that appear to be individual to each proposed plaintiff – at least to an extent that is "so individualized that it is inefficient or unmanageable to proceed with a representative class" and would weigh against Section 216(b) collective treatment. *Cortez*, 646 F. Supp. 3d at 854. As the parties' joint submission explains, "Plaintiff alleges that Dakota's Steakhouse violated federal law based on one or more of the following: (1) failing to notify servers and bartenders about the tip credit provisions prior to taking a tip credit; (2) requiring servers and bartenders to pay for uniforms, tools, and other expenses; (3) failing to lawfully distribute servers' tips from the tip pool among employees who were lawfully permitted to be paid with tips; (4) requiring servers and bartenders to perform nontipped work and excessive 'side work.' …. Dakota's

Steakhouse denies the allegations, denies any liability arising from the allegations, and asserts that its servers and bartenders were at all times paid in compliance with state and federal laws." Dkt. No. 39-1 at 1 of 4.

And, as the parties' stipulation appears to reflect, "allowing the putative plaintiffs to sue collectively would lower their costs and allow the Court to efficiently resolve common issues of law and fact that pertain to the proposed collective of paralegals in one proceeding instead of in multiple individual proceedings," and Defendants do not assert that they "will be prejudiced or otherwise particularly burdened by being made to litigate against a collective." *Francis-Luster*, 2022 WL 822468, at *4. And, so, the third "factor weighs in favor of finding the proposed collective-action members similarly situated." *Id.*

Because the parties' stipulation reflects sufficient similarity and that no individualized defenses are at play and fairness and procedural considerations favor collective action, the Court should certify the FLSA collective proposed here. *Accord id.* at *5.

II. <u>The Court should approve the proposed notice forms and schedule.</u>

"The benefits of a collective action depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate. As such, courts should exercise their discretion regarding the form and content of the notice so as to ensure that the notice is accurate and that it includes information that would be needed to make an informed decision about whether to join the lawsuit." *Cervantez v. TDT Consulting,*

*LLC*, No. 3:18-cv-2547-S-BN, 2019 WL 3948355, at *10 (N.D. Tex. July 22, 2019) (cleaned up), *rep. & rec. adopted*, 2019 WL 3947585 (N.D. Tex. Aug. 21, 2019).

No party objects to the proposed notice plan and schedule, which includes notice being disseminated to the collective members by first-class mail and text message and then a reminder being mailed by Plaintiffs' counsel by first-class mail, and which requires Defendants to provide to Plaintiffs' counsel certain contact and identifying information regarding all collective members.

The Court should approve the proposed notice [Dkt. No. 39-1], which appropriately, among other things, "inform[s] potential class plaintiffs that they may contact any attorney of their choosing to discuss the case"; "contain[s] a brief explanation of [Defendants'] bases for disputing liability"; "inform[s] the reader that he or she may be required to pay a proportional share of taxable court costs if the plaintiffs receive an unfavorable decision"; and "advise[s] parties that, in joining the lawsuit, they may be required to give a deposition, respond to written discovery, and testify in court." *Cervantez*, 2019 WL 3948355, at *11.

And the Court should approve the proposed reminder notice [Dkt. No. 39-3] and the proposed, short-version notice by text [Dkt. No. 39-2], where courts in this circuit have "found that text messages are appropriate." *Cortez*, 646 F. Supp. 3d at 857-58; *accord T.S. by & through P.O. v. Burke Found.*, 521 F. Supp. 3d 691, 699 (W.D. Tex. 2021); *Cervantez*, 2019 WL 3948355, at *13.

The undersigned finds that the Consent to Join FLSA Lawsuit form [Dkt. No. 39-1] is sufficient as written and recommends that the Court authorize the parties to

disseminate the form. *Accord Cervantez*, 2019 WL 3948355, at *11.

The Court should also order Defendants to provide Plaintiffs' counsel with the specified contact and identifying information regarding all collective members. "Courts have routinely ordered employers to produce such information for the purpose of transmitting a Notice." *Cervantez*, 2019 WL 3948355, at *11.

And the undersigned that a 60-day opt-in period from the date of mailing, with a follow-up communication after 30 days, is adequate. *Accord Cervantez*, 2019 WL 3948355, at *12.

The Court should approve the parties' proposed notice forms, order that notice be distributed under the parties' proposed schedule, and approve the proposed 60-day opt-in period.

## Recommendation

The Court should grant the parties' Joint Motion for Certification of a Collective Action and the Issuance of Court-Authorized Notice [Dkt. No. 39] and sign and enter their proposed order [Dkt. No. 39-4].

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation

where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: December 26, 2023

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE